UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SCOTT ALLEN BERNOVICH,

             Petitioner,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security
Administration,[1]

             Respondent.

Case No. 3:15-cv-00476-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Pending before the Court is the Petition for Review of the Commissioner's denial of Disability Insurance Benefits and Supplemental Security Income filed by Petitioner Scott Allen Bernovich on October 9, 2015. (Dkt. 2.) Pursuant to 28 U.S.C. § 636(c), all parties consented to the exercise of jurisdiction over this matter by the undersigned United States Magistrate Judge. (Dkt. 11.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Fed. Rule Civ. P. 25(d), Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Respondent in this matter. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

for the reasons that follow, the Court will remand the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Bernovich filed an application for Disability Insurance Benefits and Supplemental Security Income on November 9, 2010, claiming disability beginning on September 30, 2009, due to depression, anxiety disorder, carpal tunnel, bi-polar disorder, and dyslexia. His application was denied initially and on reconsideration, and a hearing was held on January 10, 2012, in Seattle, Washington, before Administrative Law Judge (ALJ) Laura Valente. After taking testimony from Bernovich and a vocational expert, ALJ Valente issued a decision finding Bernovich not disabled on January 26, 2012. Bernovich timely requested review by the Appeals Council, which denied his request for review on June 20, 2012.  Petitioner appealed that final decision to the United States District Court for the Western District of Washington under 42 U.S.C. § 405(g). Pursuant to a stipulation between the Commissioner and Bernovich, the court reversed and remanded the Commissioner's decision.[2] The Appeals Council remanded the case for a new hearing on March 5, 2013.

---

[2] The court ordered the ALJ on remand to:

- Reconsider the medical evidence of record, specifically the opinion of Dr. Kenderdine, and provide the weight accorded to that opinion and, if rejecting any portions of the opinion, provide specific and legitimate reasons for doing so in accordance with Social Security Ruling 96-2p;

- Reassess the claimant's residual functional capacity; and

- Reevaluate the claimant's credibility and, if necessary, obtain supplemental vocational expert testimony to assist in determining what jobs exist for claimant given his age, education, vocational factors, and residual functional capacity.

(AR 510-511.)

**MEMORANDUM DECISION AND ORDER –2**

The remand hearing occurred on August 19, 2014, in Boise, Idaho, before ALJ Marie Palachuk. After taking testimony from Bernovich and a new vocational expert, ALJ Palachuk issued a decision finding Bernovich not disabled on November 4, 2014. (AR 457.) The Appeals Council denied review on August 10, 2015, making the ALJ's determination the final decision of the Commissioner. (AR 445.) Bernovich appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Bernovich was born in 1969 and was 44 years of age at the time of the remand. His past work experience includes restaurant cook, bartender, retail sales clerk, and computer repairman. (AR 475.) Bernovich last worked in 2009 as a computer repairman at an office supply superstore, but quit due to his mental impairments.

From October 9, 2010, through June 10, 2010, Bernovich received counseling and medication treatment for bi-polar disorder and moderately severe depression from various doctors and social workers at the Health Point-Kent Clinic in Washington State. On his first visit to the clinic, on October 9, 2009, Bernovich presented experiencing a suicidal episode. He was seen by Mark A. Wentworth, M.D., and Lisa Martin, Ph.D. (AR 334.) Dr. Martin doubted that Bernovich was bi-polar, but opined that Bernovich was "deeply depressed." (AR 333.) Both medical professionals thought in-patient treatment was necessary; however, all beds were full at the time. When Bernovich learned that he would not be receiving in-patient treatment, he became agitated, police and emergency medical were summoned, and Bernovich was taken to a nearby hospital emergency room.

Bernovich saw Dr. Wentworth again on November 9, 2009, December 8, 2009, and January 6, 2010. During each visit, Dr. Wentworth opined that Bernovich exhibited signs of depression, although his symptoms had improved since his first visit in October of 2009. (AR 329, 327, 325.) Over this period of time, Dr. Wentworth treated Bernovich for depression by prescribing Ativan and Paxil. At the request of Bernovich, Dr. Wentworth completed a work capacities assessment in early January of 2010: Dr. Wentworth opined that Bernovich's mental impairments precluded him from all work. Bernovich next saw Melissa S. Negeretti, M.D., at the Health Point-Kent Clinic on March 4, 2010, May 7, 2010, and June 2, 2010. She continued managing Bernovich's medications and recorded that Bernovich continued to suffer from severe depression during each visit. (AR 320, 317.)

Toward the end of 2010 and through 2012, Kitsap Mental Health Services provided ongoing counseling and treatment (including medication management) to Bernovich for bi-polar II disorder, generalized anxiety disorder, adjustment disorder with mixed anxiety and depressed mood, and major depressive disorder. This care and treatment was under the direction of Licensed Mental Health Counselor Pamela Whitely, and Advanced Registered Nurse Practitioner Patrick Graham. (AR 360, 367-8, 421, 758-9, 390.)

In late 2012, Bernovich and his fiancé (now wife), Jacqueline Davis, moved to Mississippi to live with Ms. Davis's parents.[3] During this period, Bernovich did not take

---

[3] Bernovich and his wife briefly moved to Virginia for one month before moving to Mississippi. (AR 491.)

medication for his mental health conditions. At the remand hearing before ALJ Palachuk, Bernovich explained that he attempted to seek mental health services in Mississippi; however, to access state services, Bernovich had to be a Mississippi resident for at least one year. Bernovich and his wife moved to Lewiston, Idaho, in December of 2013. In February of 2014, Bernovich continued his treatment at the Snake River Clinic for bi-polar disorder and depression. (AR 755, 765.)

Since 2009, five examining physicians evaluated Bernovich in connection with his disability claims. First, on October 1, 2009, William R. Wilkinson, Ed.D, with the Washington State Department of Health and Welfare, evaluated Bernovich. (AR 292.) Dr. Wilkinson observed certain markedly severe depression symptoms: no concentration; no motivation; inability to multitask; and, catastrophic thinking. (AR 293.) He observed anxiety symptoms of a marked to severe inability to focus, extreme feelings, obsessive thoughts, and panic attacks. (*Id.*) Dr. Wilkinson diagnosed Bernovich with bi-polar mixed-manic depression, agitated depression, and panic disorder without agoraphobia, and assessed a Global Assessment of Functioning (GAF) of 45. (AR 294.) Dr. Wilkinson's evaluation found no indication of current or recent substance abuse. *Id.* He opined that Bernovich was not capable of working at that time. (AR 295.)

On May 28, 2010, Shawn K. Kenderdine, Ph.D., with the Washington State Department of Health and Welfare, evaluated Bernovich. (AR 304.) Dr. Kenderdine observed the following severe depression symptoms: low energy levels, low motivation, social isolation, and increased irritability interfering with ability to interact with co-workers and supervisors. He noted that Bernovich's anxiety "interfered" with the

following symptoms: inability to focus and sustain concentration, poor short term memory, and poor ability to learn new work-related material. He assessed a GAF of 55. Dr. Kenderine reported also that Bernovich suffered from polysubstance abuse. He noted the abuse began at the age of 16, that Bernovich last used the month prior to the evaluation, his substance abuse "impacted all areas of his life," and his depression and anxiety likely predated the substance abuse. (AR 307.) Dr. Kenderine did not include what substances Bernovich used or the extent of the abuse occurring at the time of his evaluation (i.e., whether the abuse occurred in the past, or was ongoing). Dr. Kenderine opined that Bernovich was capable of performing activities of daily living and could interact on a superficial level with a few individuals. (AR 308.)

On August 4, 2010, and again on July 11, 2011, Norma L. Brown, Ph.D., with the Washington State Department of Health and Welfare, evaluated Bernovich regarding his eligibility for public assistance. (AR 341, 432.) During her first clinical evaluation, Dr. Brown observed severe depressive symptoms of low energy, and marked problems with sustained concentration and persistence. During her later clinical evaluation with Bernovich, Dr. Brown observed marked problems with sustained concentration and persistence and severe low energy. (AR 433.) She noted errors on a trail making test, indicating inattention. (AR 434.) Dr. Brown diagnosed Bernovich with bi-polar disorder and panic disorder, and assessed a GAF of 45 during both evaluations. (AR 343, 433-4.)

On March 7, 2011, Shannon L. Jones, Ph.D., with Harbor Behavior Health in Gig Harbor, Washington, conducted a psychological evaluation of Bernovich and opined that he suffered from bi-polar II disorder. (AR 378.) She found that he met the criteria for

having experienced a major depressive episode, including mood cycling, anhedonia, anger, difficult with focus and concentration, poor appetite, broken sleep, fatigue, lack of motivation, hopelessness, and suicidal ideation without plan or intent. (AR 381.) Dr. Jones assessed Bernovich's GAF as 50. During her interview of Bernovich, she recorded history of past alcohol abuse with no current or recent substance use or abuse. (AR 379.) Dr. Jones noted that Bernovich's "alcohol dependence" was in "full sustained remission." (AR 381.)

Finally, in December of 2013 while in Mississippi, Bernovich had a psychological evaluation with J.D. Matherne, Ph.D. During this, Bernovich reported a detailed history of alcohol abuse, but denied having a current problem with alcohol use or abuse. (AR 474.) Dr. Matherne diagnosed Bernovich with adjustment disorder with mixed anxiety and depressed mood, and mixed personality disorder. (AR 749.) Dr. Matherne opined that Bernovich appeared to be "mildly impaired in his ability to perform routine, repetitive tasks," and that he was "mildly impaired in his ability to interact with co-workers and supervisors." *Id.*

Two non-examining state agency psychologists, John Robinson and Dan Donahue, reviewed Bernovich's medical record on March 3, 2011, and June 16, 2011, respectively. Both psychologists opined Bernovich would "function best in limited public setting [with] familiar coworkers as [claimant] has [history] if HI and social avoidance." (AR 113, 128.)

**MEMORANDUM DECISION AND ORDER –7**

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Bernovich had not engaged in substantial gainful activity since his alleged onset date of September 30, 2009.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Bernovich's bi-polar disorder, depression, anxiety, and alcohol abuse severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Bernovich's impairments did not meet or equal the criteria for the listed impairments, specifically considering the criteria of Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner must determine the claimant's residual functional capacity (RFC) and next determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Bernovich retained the capacity to ability a full range of work at all exertional levels, but with the following non-exertional limitations: he is able to understand, remember and carry out simple, routine and repetitive tasks and instructions, and well learned detailed tasks; he is able to maintain attention and concentration of two-hour intervals between regularly scheduled breaks; he is capable of a low stress job

(defined as only occasional changes in work settings/routine and only occasional need to use judgment/decision-making); he is limited to no interaction with the public and only superficial interactions with co-workers and supervisors. (AR 465.)

At step four, the ALJ found Bernovich was not able to perform his past relevant work as a restaurant cook, bartender, retail sales clerk, or computer repairman. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the ability to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education and work experience. With the RFC described above, the ALJ found Bernovich could perform the requirements of representative occupations such as fish cleaner, dining room attendant, and housekeeper-cleaner.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §

MEMORANDUM DECISION AND ORDER –9

423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may

**MEMORANDUM DECISION AND ORDER –10**

question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Bernovich contends the ALJ erred at steps two and four. Bernovich first alleges the ALJ erred by not including or considering his personality disorder as a severe impairment. Second, Bernovich asserts the ALJ committed error by failing to provide specific and legitimate reasons supported by substantial evidence for rejecting or providing minimal weight to the opinions of his treating physician and several examining medical professionals. Third, Bernovich contends the ALJ erred in assessing his credibility. And, finally, Bernovich argues the ALJ improperly weighed the lay testimony of his wife, Ms. Davis. Each of Bernovich's assignments of error will be discussed in turn.

## I. Severe Impairments

As noted, the ALJ found Bernovich has the severe impairments of bi-polar disorder, depression, anxiety disorder, and alcohol abuse. In Bernovich's Application for Social Security Benefits, under the "medical conditions" section, Bernovich was instructed to list "all physical or mental conditions… that limit [his] ability to work." (AR

**MEMORANDUM DECISION AND ORDER –11**

207.) Although Bernovich did not list "personality disorder" as a condition, he now asserts the ALJ erred at step two because she failed to consider his personality disorder as one of his severe impairments.

The United States Court of Appeals for the Ninth Circuit has held that, when an ALJ resolves step two in a claimant's favor—i.e., finding that a severe impairment exists—the ALJ's failure to identify additional severe impairments is harmless, especially if the ALJ considered the impairment later in the sequential process. *Pouppirt v. Comm'r of Soc. Sec.*, 609 F. App'x 440, 441 (9th Cir. 2015); *see also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Accordingly, because the ALJ resolved step two in Bernovich's favor and discussed his personality disorder later in the sequential process,[4] the Court finds any error by the ALJ in failing to identify Bernovich's personality disorder as an additional severe impairment was harmless.

## II. Physician/Psychologist Opinions

Bernovich argues the ALJ erred by failing to provide specific and legitimate reasons[5] for rejecting, or providing only minimal weight to, the opinions of his treating

---

[4] The ALJ considered Bernovich's personality disorder in determining the RFC:

> As to claimant's mental symptoms, a range of mental health diagnoses appear in the record including [an] adjustment disorder with mixed anxiety and depressed mood and/or major depressive disorder; bi-polar disorder; generalized anxiety disorder and/or panic disorder; personality disorder with antisocial traits; reading/learning disorder by history; and history of alcohol abuse.

(AR 465.)

[5] The specific and legitimate standard is used because the opinions of the two non-examining state agency psychologists, Robinson and Donahue, are contradicted by the opinions of the treating and examining medical professionals.

**MEMORANDUM DECISION AND ORDER –12**

physician, Dr. Wentworth, and five examining physicians—Drs. Matherne, Kenderdine, Jones, Brown, and Wilkinson. The Commissioner contends the ALJ properly weighed all medical opinion evidence. With the exception of the ALJ's findings as to Drs. Matherne and Kenderdine, the Court finds as more fully explained below, the ALJ erred when assigning weight to the opinions of Drs. Wentworth, Jones, Brown, and Wilkinson.

### A. Legal Standard

The United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chatter,* 81 F.3d 821, 830 (9th Cir.1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987).

If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983). Likewise, the ALJ must provide clear and convincing reasons for rejecting the un-contradicted opinions of an examining physician. *Lester,* 81 F.3d at 830–31. And, "like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be

**MEMORANDUM DECISION AND ORDER –13**

rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

"The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (internal citation omitted). "Determining whether inconsistencies are material (or in fact inconsistencies at all) ... falls within this responsibility." *Id.* "An ALJ can meet the requisite specific and legitimate standard for rejecting a treating physician's opinion deemed inconsistent with or unsupported by the medical evidence 'by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Smith v. Astrue*, 2011 WL 3962107, at *5 (C.D. Cal. Sept. 8, 2011) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

### B. Dr. Wentworth

Bernovich argues the ALJ erred by rejecting the opinion of treating physician, George Wentworth, provided in a work capacities assessment. In that assessment, Dr. Wentworth opined Bernovich's severe and marked mental impairments precluded him from sustaining full time employment. In her decision, the ALJ proffered two reasons for rejecting Dr. Wentworth's opinion: (1) the opinion was not based on "specific observations or examination findings;" and (2) the opinion was inconsistent with "the longitudinal medical evidence, the claimant's objective exam findings, progress notes, activities and demonstrated functioning." (AR 474.) As explained below, neither is a specific and legitimate reason supported by substantial evidence to reject the testimony of a treating and examining physician.

MEMORANDUM DECISION AND ORDER –14

In her decision, the ALJ set forth a detailed summary of Bernovich's mental health and medical records, including the work capacities assessment completed by Dr. Wentworth at Bernovich's request, dated January 5, 2010. (AR 474.) In the assessment, Dr. Wentworth diagnosed Bernovich with major depression and opined that Bernovich's condition rendered him unable to maintain employment. (AR 338.) Dr. Wentworth opined that Bernovich's depression limited his ability to follow instructions, concentrate for extended periods of time, and interact with others. *Id.* He noted Bernovich had low level social skills, and that it required "great effort" for Bernovich to access healthcare services, and to make, keep, and arrive to his appointments on time. (AR 339.) He noted also that, while Bernovich was improving with the assistance of medication, his progress was slow. (AR 338.)

Bernovich argues the ALJ's first reason for rejecting Dr. Wentworth's opinion—because his opinion was not based on "specific observations or examination findings"—is in error because the ALJ failed to consider Dr. Wentworth's previous records that indicate Dr. Wentworth did examine and make observational findings regarding Bernovich's mental impairments. Bernovich contends these records (which pre-date the assessment by only a few months) lend support to Dr. Wentworth's opinion that Bernovich's mental impairments render him unable to work.

Dr. Wentworth counseled and treated Bernovich on four separate occasions between October of 2009 and January of 2010. During the first visit on October 9, 2009, Bernovich presented with "behavior" problems. (AR 334.) Specifically, Bernovich reported he was experiencing suicidal and homicidal thoughts, he felt hopeless and

**MEMORANDUM DECISION AND ORDER –15**

worthless, and he had severe mood swings and anger issues. Dr. Wentworth diagnosed Bernovich with acute "depression, major, single episode," and opined that he "need[ed] inpatient" treatment. Dr. Wentworth and on-site psychologist Lisa Martin, searched for an open in-patient bed for Bernovich; however, none was available. Because Dr. Wentworth felt Bernovich was unstable, he called the police, and an ambulance took Bernovich to an emergency room at a nearby hospital for admission.

Dr. Wentworth examined and treated Bernovich three additional times on November 9, 2009, December 8, 2009, and January 6, 2010. During each visit, Dr. Wentworth opined Bernovich still exhibited signs of depression, although his symptoms had improved since his first visit in October of 2009. (AR 329, 327, 325.) These four examinations and the findings from these examinations, which are consistent with and support Dr. Wentworth's opinions in the work capacities assessment, were not discussed or considered by the ALJ in her determination.

The ALJ's second reason for rejecting Dr. Wentworth's opinion—because it was inconsistent with the "longitudinal medical evidence"—is also insufficient. While no specific inconsistencies were articulated in support of the ALJ's rejection of Dr. Wentworth's opinion, Respondent argues in her response brief that Dr. Wentworth's opinion is in conflict with Mississippi examining physician Matherne, and the opinions of two non-examining state agency psychologists Robinson and Donahue. As explained below, their opinions, when viewed in light of the entire medical record, do not satisfy the substantial evidence requirement necessary for the ALJ to reject the opinion of a treating and examining physician. *See Morgan*, 169 F.3d at 600 ("[o]pinions of a

nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

Bernovich visited Dr. Matherne one time on December 10, 2013, for the purpose of obtaining a psychological examination as requested by the Mississippi Disability Determination Services. (AR 744.) While Dr. Matherne did not opine specifically that Bernovich was incapable of full time employment, he did opine that Bernovich was only mildly impaired in his ability to perform routine, repetitive tasks, and only mildly impaired in his ability to interact with co-workers and supervisors. (AR 749.) Two non-examining state agency psychologists, Robinson and Donahue, reviewed his medical record and they both determined that Bernovich was not disabled and would "function best in limited public setting [with] familiar co-workers." (AR 113, 127-128.)

When viewed in light of the entire "longitudinal medical evidence," the opinions of these three physicians do not amount to the necessary substantial evidence to support the ALJ's rejection of Dr. Wentworth's opinion. In fact, as indicated in the chart below, the overwhelming majority of other examining physicians opined that Bernovich has severe functional impairments, consistent with Dr. Wentworth's opinion:

| | Wilkinson (examining) 10/1/09 (AR 295) | Kenderdine (examining) 5/28/10 (AR 307-8) | Brown (examining) 8/4/10 (AR 343-45) | Jones (examining) 3/7/11 (AR 380-81) | Brown (examining) 7/11/11 (AR 434) | Matherne (examining) 12/10/13 (AR 744-752) |
|---|---|---|---|---|---|---|
| Understand, remember, & follow simple instructions | Mild[6] | Mild | Mild | | Mild | Good |
| Understand follow & remember complex instructions | **Moderate** | Mild | **Moderate** | | **Moderate** | Fair |
| Learn new tasks | **Moderate to Marked** | Mild | **Moderate** | | **Moderate** | |
| Exercise judgment & make decisions | **Moderate** | **Marked** | **Marked** | | Mild | Fair |
| Perform routine tasks | Mild | **Moderate** | **Marked** | | Mild | Mild |
| Relate appropriately to co-workers & supervisors | **Marked to Severe** | **Marked** | **Marked** | **Maybe not able to** | | Mild/Fair |
| Interact appropriately in public contacts | **Moderate** | **Marked** | **Moderate** | | **Moderate** | Fair |
| Respond appropriately to & tolerate pressures & expectations of work | **Severe** | **Marked** | **Severe** | **No ability** | | Fair |
| Difficulty completing a normal workday or week without interruptions from psychologically based symptoms & to perform at a consistent pace without unreasonable number of length & rest periods | | | **Severe** | | **Severe** | |
| Care for self, including hygiene & appearance | Mild | **Moderate** | **Moderate** | **Has difficulty** | | Fair |
| Maintain appropriate behavior in a work setting | **Marked to Severe** | **Marked** | **Marked** | **Could not be expected to maintain** | **Moderate** | |
| GAF rating | **45** | **55** | **45** | **50** | **45** | |

Because a treating physician's opinion must be given great weight if it is well-

supported and not inconsistent with the other substantial evidence in the record, which is

---

[6] The scale for the chart is: none (no interference), mild (no significant interference), moderate (significant interference), marked (very significant interference), severe (inability to perform one or more basic work-related activities). (AR 434.)

Dr. Matherne's examination findings were reported using a different scale: unlimited (ability to function is not limited by mental impairment), good (ability to function is more than satisfactory), fair (ability to function is limited but satisfactory), poor (ability to function is seriously limited by not precluded), and none (no useful ability to function). (AR 750.)

**MEMORANDUM DECISION AND ORDER –18**

the case here as explained above, the Court finds the ALJ erred by rejecting Dr. Wentworth's opinion. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

### C. Dr. Matherne

Bernovich contends the ALJ erred by assigning partial weight to examining psychologist Matherne's impairment opinions to the extent they supported the RFC determination, rejecting those that were not consistent with the RFC.  Like Respondent, the Court believes Petitioner misinterpreted the AJL's findings.  The ALJ found Petitioner had moderate restrictions, rather than mild restrictions as opined by Dr. Matherne, in concentration, persistence and pace, and in social interactions.  (AR 471.) As such, the ALJ rejected these aspects of Dr. Matherne's opinions because the ALJ found, from the record as a whole, that Petitioner was more limited than Dr. Matherne had found.  As indicated in the above chart, all of Dr. Matherne's findings were for less than moderate restrictions.

The only opinions of Dr. Matherne to which the ALJ assigned any weight in her RFC pertained to Bernovich's ability to perform routine, repetitive tasks and his abilities to maintain attention and concentration and "deal with the public." (AR 749, 751.)  The ALJ did not err in this regard.  And, to the extent Bernovich argues the ALJ should have assigned more weight to the findings of Dr. Matherne the ALJ rejected, the Court finds such an assignment clearly would not have resulted in a finding of disability in favor of Bernovich.

### D. Dr. Kenderdine

Bernovich contends the ALJ erred by assigning only little weight to, and excluding from her RFC determination, the opinions of examining psychologist Kenderdine about marked limitations based on Bernovich's alcohol abuse. The Commissioner asserts that the ALJ's discussion of Bernovich's alcohol usage before making a finding of disability may have been error; however, she contends the error was harmless because the ALJ's analysis excluding the effects of Bernovich's alcohol abuse is supported by substantial evidence in the record. For the following reasons, the Court finds that, to the extent the ALJ may have erred in assigning weight to Dr. Kenderdine's opinions about Bernovich's occupational limitations, such error was harmless.

Dr. Kenderdine examined Bernovich on May 28, 2010, for the purpose of evaluating Bernovich's ability to engage in competitive employment. (AR 304.) Dr. Kenderdine opined Bernovich had only mild limitations in the ability to understand, remember, and follow complete instructions, and to learn new tasks. (AR 307-8.) He further assessed Bernovich as moderately limited in his ability to perform routine tasks and care for himself. (*Id.*) The ALJ gave these opinions "significant weight," because they were consistent with Bernovich's performance on the exam, and consistent also with Bernovich's reported range of activities and demonstrated functioning. (AR 471-2.)

Dr. Kenderdine further opined Bernovich had marked limitations in other areas of occupational functioning, due to his mental impairments, including the ability to exercise judgment and to make decisions, the ability to relate appropriately to co-workers and supervisors and interact appropriately in contact with the public, and the ability to

respond appropriately to and tolerate the pressures/expectations of a normal work setting. (AR 308.) In Dr. Kenderine's report, he diagnosed Bernovich with polysubstance dependence, and opined that Bernovich's "long-term chemical dependency issues negatively impact" and "impair" his abilities in "all areas of life." (AR 307.) The ALJ reasoned that these opinions of Dr. Kenderine should be given only little weight, because they factored in alcohol abuse by Bernovich. (AR 472.) Therefore, the ALJ did not incorporate these findings of marked functional limitations into her RFC determination.

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). Pursuant to the Contract with America Advancement Act, an "individual shall not be considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would…be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Social Security Administration Regulations specify: "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a).

A finding of disability is a condition precedent to the application of 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J). In other words, "an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ

finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)." *Bustamante*, 262 F.3d at 954. Consideration of whether a claimant's alcohol abuse is a contributing factor material to his mental impairments, before a finding of disability, constitutes error. *Id.* However, the absence of an explicit disability finding in the initial five step analysis is harmless, as long as the ALJ's later analysis excluding the effects of the alcohol abuse is supported. *Para v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

Here, while the ALJ did not complete the full five-step analysis to determine whether Bernovich's mental impairments were disabling before she discussed alcohol abuse, it appears the ALJ gave Bernovich the benefit of the doubt—the ALJ omitted Dr. Kenderine's limitation findings that she found were enhanced by alcohol abuse and completed the RFC assessment as if there was no alcoholism at play. Had the ALJ included these findings of marked limitations by Dr. Kenderine in her RFC determination, she would have found alcoholism was a contributing factor to the same, and benefits would have been denied on that basis.

If the ALJ erred by discussing Bernovich's alcohol abuse before completing the full five-step analysis, the Court finds such error was harmless for the alternative reason more fully explained below--Dr. Kenderine's findings of marked limitations were not supported by substantial (or corroborated and unambiguous) evidence.  Thus, excluding them from the RFC determination actually avoided error. While Dr. Kenderine diagnosed Bernovich with polysubstance dependence, a close review of Dr. Kenderine's

examination record reveals that Dr. Kenderdine did not indicate which substances were being used or abused by Bernovich, and whether the use or abuse was current, or occurred merely in the past.

Indeed, in the instances where alcohol abuse was mentioned by Bernovich to other physicians, their records refer to *past* alcohol abuse. For instance, treating nurse practitioner Graham, at Health Point-Kent Community Clinic, recorded that Bernovich stated he briefly drank alcohol from ages 17 to 23, but has been clean and sober since that time. (AR 362.) Examining psychologist Jones reported that Bernovich "acknowledged a history of alcohol abuse, but denied substance use/abuse, reports he has been clean and sober since the age of 23." (AR 381.) Treating physician's assistant Johnson with the Peninsula Community Health Services reported that Bernovich acknowledged "a history of alcohol abuse, but no current usage." (AR 390.) And, examining psychologist Matherne reported Bernovich started drinking at age 16, but has not been intoxicated since age 21. (AR 746.) None of these health care professionals indicated in their records that Bernovich  was currently abusing alcohol, nor did they indicate that Bernovich's alcohol usage (past or present) was a contributing factor to the limitations from his mental impairments.

For these reasons, the Court finds it was harmless error for the ALJ to exclude limitations due to alcoholism in her RFC determination.

### E. Drs. Jones, Brown, and Wilkinson

Bernovich contends the ALJ erred by failing to provide specific and legitimate reasons for giving the opinions of examining physicians Brown, Jones, and Wilkinson

only little weight. All three physicians opined Bernovich had moderate to marked limitations in several areas of social and occupational functioning. In support of the ALJ's decision to provide only little weight to the opinions of Brown and Jones, the ALJ noted their opinions relied heavily on Bernovich's self-reports. In addition, the ALJ reasoned the opinions of Brown and Wilkinson were given little weight because Bernovich did not mention his alcohol usage to the physicians (which made the physicians' reports less reliable). For the reasons that follow, the Court finds that neither reason is supported by substantial evidence necessary to justify the ALJ's assignment of only little weight to the opinions of these examining physicians.

### 1.  Reliance on Bernovich's Self-Reports

Dr. Brown examined Bernovich two times, once on August 4, 2010, and again on July 11, 2011, for the purpose of evaluating Bernovich's ability to engage in competitive employment. Following the first examination in 2010, Dr. Brown noted Bernovich had moderate to severe limitations in several areas of social and occupational functioning. Dr. Brown opined Bernovich was moderately limited in his ability to complete tasks, learn new tasks, interact with the public, and care for himself. She opined also that Bernovich had marked limitations in his ability to exercise judgment and make decisions, and in his ability to relate appropriately to co-workers and supervisors. She found Bernovich was severely limited in the ability to tolerate the pressures and expectations of a normal work setting. She gave Bernovich a GAF rating of 45, indicating serious social/occupational impairment. The findings of Dr. Brown in her second evaluation in July of 2011 contained findings nearly identical to the first examination.

**MEMORANDUM DECISION AND ORDER –24**

While some of Dr. Brown's findings appear to have been based upon Bernovich's self-reports, the "Mental Health Symptoms" and "Functional Limitations" portions of her examinations contain findings based on Dr. Brown's own clinical observations of Bernovich: "poor attention during MSE," "very long response latencies," "has lack of attention that affects his performance." (AR 344.)

Dr. Jones examined Bernovich on March 7, 2011, also for the purpose of evaluating Bernovich's ability to engage in competitive employment. Following the examination, Dr. Jones opined Bernovich "did not appear to have the ability to withstand the pressures associated with day-to-day work activity," "he could not carry out work-related activities with adequate pace and perseverance," and "he could not be expected to maintain a regular work schedule or complete a normal workday without interruptions." (AR 381.) She gave Bernovich a GAF rating of 50. Like Dr. Brown, while some of Dr. Jones' findings appear to have been based on Bernovich's self-reports, they include also several of her own clinical observations of Bernovich. For example, Dr. Jones observed that Bernovich "displayed mild psychomotor agitation," that he "appeared anxious," and that "he was a poor historian throughout [her] evaluation." (AR 379-380.)

"An ALJ may reject an examining physician's opinion if it is contradicted by clinical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199 (9th Cir. 2008). But, where an examining psychologist's report does not contain any indication that that the claimant was malingering or that she questioned the truth of a claimant's complaints, "substantial evidence does not support an ALJ's finding that an examining psychologists took claimant's 'statements at face value.'" *Regennitter v. Comm'r of Soc. Sec. Admin.*,

166 F.3d 1294, 1300 (9th Cir. 1999); *see also Ryan*, 528 F.3d at 1199 ("An ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Id.*

There is nothing in the record indicating that either Dr. Brown or Dr. Jones doubted Bernovich's descriptions of his symptoms, or that either Dr. Brown or Dr. Jones relied more heavily on Bernovich's self-reports than on their own clinical observations in reaching their similar conclusions that Bernovich is incapable of maintaining full time employment. In fact, during both of Dr. Brown's evaluations, she administered a REY malingering test and recorded scores of 14/15 and 15/15, both of which indicate "no obvious malingering." (AR 435, 348.) Likewise, Dr. Jones opined in her evaluation that Bernovich "seem[ed] to be forthright and sincere in his answers to [her] questions." (AR 380.) Accordingly, the ALJ's reason for giving the opinions of Dr. Brown and Dr. Jones only little weight is not supported by substantial evidence, and was in error.

## 2. Misrepresentation of Substance Usage

The ALJ gave Dr. Brown's and Dr. Wilkinson's opinions only little weight because Bernovich did not reveal his current substance use to either Dr. Brown or Dr. Wilkinson,[7] which the ALJ noted diminished the reliability of their findings. Bernovich

---

[7] Dr. Wilkinson opined that Bernovich was mildly limited in his ability to understand, remember and follow simple instructions, perform routine tasks, and his ability to care for himself. (AR 295.) He found Bernovich was moderately limited in the ability to understand, remember and follow complex instructions, to learn new tasks, to exercise judgment and make decisions, and interact appropriately in public. He found Bernovich was moderately limited in his ability to relate appropriately to co-workers and supervisors, and maintain appropriate behavior in a work setting. And he found Bernovich severely limited in the ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting.

contends the ALJ's reasoning regarding current substance use is not supported by substantial evidence in the record; the Court agrees.

As discussed in detail above, substantial evidence does not support a finding that Bernovich had a current problem with substance abuse or alcohol use. As such, it was error for the ALJ to discredit the opinions of Dr. Brown and Dr. Wilkinson based on an assumption that Bernovich concealed ongoing substance abuse or alcoholism during his evaluations.

## III. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.* If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch*, 400 F.3d at 680; *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's subjective complaints. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter*, 166 F.3d at 1296. If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas*, 278 F.3d at 958-59. Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

The ALJ found Bernovich's testimony regarding the severity of his symptoms not fully credible, because: Bernovich's presentation and performance on psychological evaluations and the various treatment records do not support the level of severity alleged; medication, when taken consistently, had proven effective; Bernovich had not consistently taken his medication; Bernovich's daily activities of living were not consistent with the severity of his alleged mental impairments; Bernovich made inconsistent statements regarding alcohol usage, suicidal attempts, hallucinations, and

**MEMORANDUM DECISION AND ORDER –28**

work history; and Bernovich had an incentive not to seek employment to avoid paying child support.

Bernovich contends the ALJ erred in assessing his credibility for two reasons. First, Bernovich asserts the ALJ's evaluation of his daily life activities failed to take into consideration the waxing and waning nature of the symptoms of Bernovich's mental impairments. Second, Bernovich contends the ALJ's evaluation of his alcohol usage and the effect of alcohol on his mental impairments is not supported by substantial evidence in the record. Because there is no evidence of malingering here, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for rejecting Bernovich's testimony regarding the functional limitations due to his mental impairments. As explained more fully below, the Court finds the ALJ erred in her assessment of Bernovich's credibility.

### A.  Presentation and performance on psychological evaluations and treatment records are consistent with Bernovich's testimony

The ALJ found that "the objective medical evidence does not support finding a more restrictive residual functional capacity than the one set forth in this decision." (AR 466.) More specifically, the ALJ found that Bernovich's presentation and performance on psychological evaluations, as well as treatments records, did not support the degree of severity alleged by Bernovich. In support of her conclusion, the ALJ referenced the evaluations conducted by examining psychologists Kenderdine and Matherne.

During his visit with Dr. Kenderdine, Bernovich reported severe symptoms of anxiety and depression. Bernovich reported that his symptoms interfered with his ability

to focus and concentrate. He reported these symptoms lead to feelings of social isolation, increased irritability, and difficulty in interacting with others. (AR 304.) In his report, Dr. Kenderdine indicated that Bernovich was mildly limited in the abilities to understand, remember and follow simple and complex instructions, and to learn new tasks. (AR 307.) Although he assessed Bernovich as markedly limited in the ability to relate to co-workers, supervisors, and the public, Dr. Kenderdine observed that Bernovich was cooperative and polite during his interview. (AR 310.) Dr. Kenderdine assessed that Bernovich was markedly limited in his ability to exercise judgment and make decisions, and to respond appropriately to and tolerate normal work-related pressures/expectations; however, Dr. Kenderdine opined also that Bernovich's "long-term chemical dependency issues negatively impacted" or "impair" these abilities. (AR 307.)

During his evaluation with Dr. Matherne, Bernovich tested within the low average range of intellectual functioning and exhibited only mild impairment in social interaction. (AR 746.) Dr. Matherne observed that Bernovich presented as oriented, with average grooming, and that he related in a cooperative and reasonably well-motivated manner. (AR 748.) Dr. Matherne reported Bernovich scored in the low average to average range of intellectual functioning, commenting "intellectual limitation is certainly not a factor that would contribute to his lack of employment." (AR 749.) Dr. Matherne concluded Bernovich appeared to be only "mildly impaired in his ability to perform routine, repetitive tasks, and only mildly impaired in his ability to interact with co-workers and supervisors." (*Id.*)

**MEMORANDUM DECISION AND ORDER –30**

The ALJ cited the above reports of Dr. Kenderdine and Dr. Matherne, but ignored the reports of the other physicians in the record, the majority of whom found Bernovich to have moderate to severe functional limitations. The ALJ's reason—that the objective medical evidence does not support Bernovich's alleged severity of symptoms—is not supported by substantial evidence in the record as a whole. Bernovich's complaints are consistent with the objective evidence in the record, which shows intermittent diagnoses of bi-polar disorder, depression, anxiety disorder, and medical opinions indicating moderate to marked functional limitations due to these mental impairments.

Contrary to Dr. Kenderdine's and Dr. Matherne's findings, the treating and other examining physicians fairly and consistently concluded that Bernovich is moderately limited in the ability to understand, follow, and remember complex instructions; moderately to markedly limited in the ability to learn new tasks and exercise judgment; markedly limited in the ability to relate with co-workers and supervisors; moderate to markedly limited in the ability to interact appropriately in public; markedly to severely limited in the ability to tolerate pressures and expectations in the workplace; severely limited in the ability to complete a normal workday or week without interruptions from his psychological symptoms; and moderately to markedly limited in his ability to maintain appropriate behavior in a work setting. Accordingly, the Court finds the ALJ erred in concluding that Bernovich's testimony about the severity of his mental impairments was unsupported by the medical record.

### B.  Medication (consistency in taking and effectiveness)

The ALJ found Bernovich not fully credible because, despite the reported

effectiveness of Bernovich's medication for treating and controlling his symptoms, the

record demonstrates that Bernovich had not been consistently compliant with taking his

medication or attending counseling.

"An 'unexplained, or inadequately explained, failure to seek treatment' may be the

basis for an adverse credibility finding." *Franz v. Colvin*, 91 F. Supp. 3d 1200, 1208 (D.

Or. 2015) (citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). However, lack of

medical treatment due to an inability to afford medical treatment does not support an

adverse credibility determination. *Id.* (citing *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir.

2007)).

Here, the ALJ found Bernovich was not consistently taking his medication as

prescribed, referencing notes from Bernovich's October 21, 2010 appointment with

Peninsula Community Health Services, where Bernovich indicated he stopped taking his

medications "because he was moving around." (AR 390.) Upon review of the record,

prior to this incident of admitted noncompliance, Bernovich was prescribed Paxil and

Ativan for depression management following a suicidal episode in October of 2009. (AR

330, 366.) During the beginning of this medication regime, then treating physician

Wentworth observed that Bernovich's symptoms had improved. (AR 325.) However, in

April of 2010 and continuing through May of 2010, treating physician Negretti opined

that Bernovich was exhibiting symptoms of a major depressive episode (while still on

Ativan and Paxil). (AR 324, 317.) Dr. Negretti discussed also with Bernovich her

concerns with continued use of Ativan because it is habit forming, and she discussed her goal to eventually take him off that medication. Despite the ALJ's observations of non-compliance, Bernovich's treatment provider was attempting to wean him off Ativan. And, contrary to the ALJ's assertion, at the time of the singular instance of non-compliance, the medical record does not support that Bernovich's medications at that time were effective at treating his mental impairments.[8]

The ALJ indicated Bernovich stopped participating in mental health counseling due to a disagreement with his providers at Kitsap Community Health, in August of 2011. The ALJ noted that there is no evidence in the record to support that Bernovich attempted to locate a different counselor. While this is an accurate observation, the ALJ failed to take into account Bernovich's financial situation and failed to consider whether it would have been financially possible to afford services elsewhere.[9] Nor did the ALJ consider that, despite the disagreement with his counseling provider, Bernovich continued to take his prescribed medications for his mental impairments until he moved out of state in 2013.

The ALJ highlighted the year in Mississippi when Bernovich was off his Lithium and other medications. The ALJ reasoned that, despite Bernovich's inability to access

---

[8] Physicians began reporting consistent improvement in his mental health once Bernovich began taking Lithium in early 2011. There is no evidence of non-compliance with Bernovich's Lithium prescription.

[9] In December of 2010, Bernovich reported to Mental Health Counselor Pam Whitely, that he was stressed about his financial situation, and stated he would not be able to make his rent payment that month. (AR 360.) Bernovich continued to seek medication treatment from Kitsap Medical Health Services providers. Notes from those providers consistently indicated that from December of 2010 continuing through June of 2012, Bernovich suffered from "Axis IV—moderate financial problems." (AR 759.)

**MEMORANDUM DECISION AND ORDER –33**

affordable health clinics, "one would still expect to find greater and more consistent efforts to alleviate symptoms if they were as debilitating as alleged." (AR 469.) During this time, Bernovich's lack of mental health treatment was clearly due to an inability to afford treatment, and thus, does not support the ALJ's adverse credibility determination. *Orn*, 495 F.3d at 638. Accordingly, the ALJ erred.

### C.  Activities of daily living

The ALJ also discounted Bernovich's credibility, finding his demonstrated functioning and other reported daily activities were inconsistent with the severity of his alleged limitations. For example, the ALJ noted that Bernovich is capable of self-care, he fixes his own simple meals, and he contributes to household chores. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater,* 80 F.3d 1273, 1284 n. 7 (9th Cir.1996).  Bernovich's report of significant mental impairments are not inconsistent with the ability to perform minimal household chores.

Additionally, the ALJ noted that Bernovich is able to watch television, play video games, surf the internet, use public transit (to get to his medical appointments), and grocery shop. Bernovich reported that he has problems when riding the bus, and gets anxious when in a crowd. He testified he cannot grocery shop alone because he experiences panic attacks if the grocery store is too crowded. (AR 60, 586.) Contrary to the ALJ's suggestion, Bernovich's ability to watch television and play video games, and his reported anxiety when in public, is consistent with the symptoms of his mental

impairments. Accordingly, the Court concludes the ALJ's reasoning is not supported by

substantial evidence, and thus, is insufficient to discount Bernovich's credibility.

### D.  Incentive not to seek employment

The ALJ discredited Bernovich's credibility because Bernovich has "an incentive

to remain disabled, so that he can avoid paying child support, and consequently, he has a

disincentive to work because he would then have to pay his child support obligation."

(AR 471.) In support of her conclusion, the ALJ referenced Dr. Matherne's report which

indicates that Bernovich's driver's license is suspended because of his failure to pay child

support. (AR 478.) Dr. Matherne noted that not having a valid driver's license limits

Bernovich's ability to obtain and maintain employment. (*Id.*) The ALJ then referenced

and agreed with the prior 2012 ALJ determination that speculated it was likely

Bernovich's child support obligations are suspended as long as he is eligible for state

temporary incapacity benefits through the Department of Social and Health Services. (AR

534.)

The Court respectfully finds Dr. Matherne's observation and the ALJ's

speculation do not constitute substantial evidence to support the ALJ's conclusion that

Bernovich is not credible because he has an incentive not to seek full time employment.

### E.  Inconsistent statements

The ALJ cites to Bernovich's inconsistent statements at the hearing and in the

medical record regarding his alcohol usage, reports of suicide attempts, hallucinations,

and work history to discredit him. (AR 469.) An ALJ may consider prior inconsistent

statements concerning symptoms and "other testimony by [plaintiff] that appears less

than candid in weighing plaintiff's credibility." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008).

As the ALJ accurately noted, several medical records indicate that Bernovich has been "clean and sober" since his early 20s. Other medical records indicate reports by Bernovich that he will occasionally consume a beer. And, during the first ALJ hearing, Bernovich reported that he consumes about a twelve-pack of beer over a six-month period of time.

In terms of suicide attempts, Bernovich reported to an examiner in 2009 that he had once attempted suicide by hanging. (AR 330.) However, during two evaluations in 2010, Bernovich reported no prior suicide attempts. (AR 348, 374.) Similarly, during an April 2010 examination, Bernovich denied having any problems with auditory and visual hallucinations. (AR 323-324.) But, in December of 2010, Bernovich reported experiencing vague auditory hallucinations, as well as visual hallucinations that the examiner noted were "of questionable validity." (AR 362.)

Last, the ALJ noted Bernovich indicated that he has not worked since 2009. However, treatment records in April and May of 2010 record that Bernovich reported "working graveyard shift doing newspaper delivery." (AR 421-422.) The ALJ's findings regarding these inconsistencies in Bernovich's reports are supported by the record.

### D. Harmless Error

An ALJ's error in finding a claimant's testimony not credible may be harmless if numerous other valid reasons exist for discrediting the claimant's testimony overall, such as the claimant's failure to seek treatment and contradictory testimony. *Batson v. Comm'r*

*of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (affirming district court decision finding that striking down one justification for discrediting a claimant's testimony amounted to a harmless error where the ALJ presented other reasons for discrediting the testimony that were supported by substantial evidence in the record).

For example, in *Batson*, the Ninth Circuit affirmed the district court's decision finding that the ALJ erred in one component of his credibility determination. *Batson*, 359 F.3d at 1197. However, the Ninth Circuit found that such error was harmless, because several other valid reasons, supported by substantial evidence, corroborated the ALJ's decision discrediting the claimant's testimony: his testimony and results of physical examinations were inconsistent with disability, his physicians doubted the severity of his claim, the extent and nature of his daily activities of living, and his delay in obtaining medical treatment. *Id.*

The ALJ's reliance here on Drs. Matherne's and Kenderdine's psychological evaluations of Bernovich,  his inconsistency with taking medication, his activities of daily living, and the speculative incentive not to seek employment, was not harmless error. Unlike the ALJ in *Batson*, the ALJ here provided only one valid reason for finding Bernovich not fully credible—his minor inconsistent statements regarding his alcohol usage, suicide attempts, hallucinations, and work history. This reason by itself does not support discrediting Bernovich's testimony overall. *See e.g., Rostocil v. Colvin*, WL 1333983, at *8 (D. Or. Apr. 2, 2014) (finding one valid reason to discredit claimant's credibility insufficient to satisfy substantial evidence standard); *see also Santiago v.*

**MEMORANDUM DECISION AND ORDER –37**

*Astrue*, 2010 WL 466052, at *21 (D. Ariz. Feb. 10, 2010) (evidence of claimaint's discharge from physical therapy after five sessions, on its own, did not "rise to the level of substantial evidence" to support ALJ's credibility finding). Accordingly, because the ALJ's ultimate conclusion regarding Bernovich's credibility was not supported by substantial evidence, the ALJ's errors were not harmless.

## IV. Lay Witness Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must consider. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). Competent lay witness testimony "cannot be disregarded without comment," *Nguyen*, 100 F.3d at 1467, and to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness," *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). But, the ALJ is not required to discuss every witness's testimony on an individualized, witness-by-witness basis. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Molina*, 674 F.3d at 1115 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness] testimony")). "The applicable regulations are in accord; they require the ALJ to consider testimony from family and friends submitted on behalf of the claimant, *see* 20

C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." *Id.*; *see also* SSR 06–03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").

Bernovich's wife, Jacqueline Davis, submitted two third party function reports, each dated January 13, 2011. (AR 223, 273.) Davis reported that Bernovich "freaks out easily in groups of people," that in "stressful conditions [Bernovich] becomes hostile vocally and becomes irrational," and that Bernovich "has difficulty following simple to complex instructions." (AR 224.) She reported that Bernovich is able to cook small meals for himself, he cleans the cat's litter box," and he can do the dishes and vacuum the floors. She reported Bernovich bathes once a week and needs to be reminded to groom himself (shave/care for hair). Davis indicated that Bernovich shops in stores for food, clothing, and household items, however, he becomes irritable and she has to accompany him. Davis drives Bernovich to all of his appointments. She reported:

> [Bernovich] has major issues being around anyone. He has been very confrontational and starts fights with people that he does not know for stupid reasons. He isolates himself when our friends are over and often isolates himself from me. I had to stop allowing him to join in conversations with my family or important people because he tries to talk over me or change the subject.

(AR 278.)

The ALJ gave little weight to Davis's opinions, because: (1) her reports are personal observations that essentially reiterate many of Bernovich's claims that he is unable to work or function in activities of daily living due to the symptoms of his mental

impairments—the same allegations the ALJ found not fully credible; and (2) her reports describe significant limitations despite reporting also Bernovich's ability to engage in a range of activities. (AR 475.)

Here, the Court has found that the ALJ's reasoning for not finding Bernovich fully credible on account of his reported activities of daily living was in error; thus, the ALJ's reasoning for rejecting Davis's reports of the same were in error also.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1. Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**;

2. This action is **REMANDED** to the Commissioner for further proceedings consistent with the above analysis and to include:

    a. Reconsider the medical evidence of record, specifically the opinions of Drs. Wentworth, Jones, Brown, and Wilkinson, and provide the weight accorded to their opinions. If applicable, provide also specific and legitimate reasons for rejecting any portions of their opinions in accordance with Social Security Ruling 96-2p;

    b. Reassess Bernovich's residual functional capacity;

    c. Reevaluate Bernovich's credibility and, if necessary, obtain supplemental vocational expert testimony to assist in determining what jobs exist for claimant given his age, education, vocational factors, and residual functional capacity; and

      d.   Reconsider the third party function reports of Ms. Davis, and if discrediting her reports, provide reasons germane to Ms. Davis for doing so.

3.  This Remand constitutes a "sentence four remand" consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 582, 584 (9th Cir. 2002).

DATED: March 27, 2017

_____
Honorable Candy W. Dale
United States Magistrate Judge